ALBERT M. WITTENBERG, HARRY CONTENT and WALTER CONTENT, a co-partnership trading as H. Content and Company,

*vs.*

FEDERAL MINING AND SMELTING COMPANY, a corporation of the State of Delaware.

*New Castle, June 8, 1927.*

*Robert H. Richards*, for complainants.

*Andrew C. Gray*, of Ward, Gray & Ward, and *Elihu Root, Jr.*, of New York City, for defendant.

THE CHANCELLOR. Reference to the opinions heretofore filed in this cause both in the Supreme Court and in this court will disclose the nature of the case. Those opinions were filed in disposing of a demurrer to the bill. All the well pleaded facts of the bill were of course admitted by the demurrer to be true. Among the facts thus admitted was the important one that at the time of the declaration of the dividend on the common stock, the "paid-in" capital of the corporation had suffered such a depletion as, under *Section* 34 of the *General Corporation Law* (*Revised Code* 1915, § 1948), would make the declaration of dividends impossible. That section was as follows:

"*Sec.* 34. DIVIDENDS; RESERVES:—The directors of every corporation created under this chapter shall have power, after reserving over and above its capital stock paid in, such sum, if any, as shall have been fixed by the stockholders, to declare a dividend among its stockholders of the whole of its accumulated profits, in excess of the amount so reserved, and pay the same to such stockholders on demand; provided, that the corporation may, in its certificate of incorporation, or in its by-laws, give the directors power to fix the amount to be reserved."

Since the decision of the Supreme Court was handed down, the Legislature of the State, by Act approved March 2, 1927, has amended said *Section* 34 by substituting a new section as follows:

"1948, *Sec.* 34. DIVIDENDS; RESERVES:—The directors of every corporation created under this chapter, subject to any restrictions contained in its certificate of incorporation, shall have power to declare and pay dividends upon the shares of its capital stock either out of its annual net profits or out of its net assets in excess of its capital as determined pursuant to the provisions of *Section* 14 of this chapter; provided, however, that if the capital of the corporation shall have been diminished by depreciation in the value of its property, or by losses, or otherwise, to an amount less than the aggregate amount to which the holders of the issued and outstanding stock of all classes having a preference upon the distribution of assets would be entitled upon such distribution, the directors of such corporation shall not declare and pay out of annual net profits any dividends upon any shares of any classes of its capital stock until such deficiency in its capital assets shall have been repaired. Subject to any restrictions contained in its certificate of incorporation, the directors of any corporation engaged in the exploitation of wasting assets may determine the annual net profits derived from the exploitation of such wasting assets without taking into consideration the depletion of such assets resulting from lapse of time or from necessary consumption of such assets incidental to their exploitation.

"Nothing contained in this section shall prevent the stockholders of any corporation, or the directors thereof if the certificate of incorporation shall so provide, from setting apart out of any of the funds of the corporation available for dividends a reserve or reserves for any proper purpose or from abolishing any such reserve in the manner in which it was created."

At the argument on the final hearing the defendant contended that the law applicable to the propriety of the payment of the dividend in question is to be gathered from *Section* 34 as amended rather than from *Section* 34 in its original form. The complainants on their brief in substance concede for the purposes of this suit at least that the position thus taken by the defendant is the correct one. I shall therefore take the dividend rule defined by the amended *Section* 34 as the rule for this case.

The defendant is a so-called wasting asset corporation and being such there is no controversy over the propriety of calculating net profits without taking into consideration the depletion of assets resulting from their exploitation. The amended *Section* 34 as applied to the facts of the case is regarded by the complainants as disposing of that question favorably to the defendant.

There, therefore, remains to be considered, with respect to the particular dividend in question, only this, namely: Are there assets of the corporation in such amount that if the common stock dividend is paid, the net assets of the corporation will not have been diminished to an amount less than that to which the holders of the issued and outstanding preferred stock would be entitled upon distribution of the assets?

That is the question to which the evidence at the hearing was directed. The only evidence adduced by the complainants to sustain their side of the contention that the dividend would entrench upon the net assets to the injury of the preferred stockholders to an extent forbidden by the amended *Section* 34 of the act, consists of the balance sheets of the corporation. These balance sheets are for the years ending respectively December 31, 1924, December 31, 1925, and December 31, 1926. The balance sheet for the year 1924 showed a slight deficiency of net assets below the preferred stock outstanding for that year. But the balance sheet for the year 1925, which is the year the controverted dividend is concerned with, shows an excess of net assets above the amount of the preferred stock more than equal to the amount of the proposed dividend.

This is enough in itself to warrant a refusal of a permanent injunction against the payment of that dividend. The defendant, however, not content to stand on the balance sheet alone, has undertaken to show by the testimony of witnesses that the balance sheet does an injustice to the company's true asset values by largely understating them; so that if the revaluation be accepted, instead of an excess of net assets above preferred stock outstanding of a million and a quarter of dollars as shown by the balance sheet of 1925, there would be a true excess of net assets above preferred stock of over $8,000,000. In view of the fact that the company's own showing based on the 1925 balance sheet justifies the dividend as lawful under the statute, it is of course not necessary for me to proceed to an examination of the oral testimony touching the question of additional values if any to be found in the reappraisal of assets about which the witnesses have testified. If I were required to do so, however, I do not hesitate to say that on the showing made I would be compelled in the absence of anything to the contrary to hold that a considerable increase over the book values would have to be accorded to this company's assets.

It follows that the prayer for permanent injunction against the common stock dividend declared on January 6, 1926, should be denied.

The resolution declaring the dividend contained at its close a declaration of dividend policy effective until further action by the board of directors, to the effect that approximately one-half of the current net profits of the company beginning with the year 1926, remaining after all charges except depletion and after the payment of current and unpaid dividends (including the then current dividend) on the preferred stock of the company, should be paid out as dividends on the common stock.

The bill in addition to an injunction against the dividend also seeks an injunction against the carrying out of this declared policy. The important part of this policy is I take it that part which contemplates the practice of ignoring depletion as a charge before earnings are available for common stock dividends. The amended *Section 34* of the act has settled the controversy as to the right of a wasting asset corporation to ignore the item of depletion in calculating net profits for dividend purposes. The "depletion" phase of

this policy therefore cannot justify the issuance of an injunction against its enforcement. As to whether the pursuit of the policy in the future would result in a reduction of net assets below the value of the outstanding preferred stock, the policy as declared fails to indicate either one way or the other. The latest balance sheet in evidence, that for the year ending December 31, 1926, shows such an ample margin of excess of net assets over preferred stock outstanding as to make me think that the policy may very well be carried out without in any wise injuring the rights of the preferred stockholders as safeguarded by the amended *Section* 34 of the act. An injunction should therefore not be granted against the carrying out of the policy. If as the policy is pursued any preferred stockholder conceives that its operation at a given time is prejudicial to the rights of stockholders of his class, it will then be in order to seek an injunction against the policy's particular application.

The bill should be dismissed. In view of the fact, however, that the complainants were justified in filing their bill by the fact as disclosed by the company's statement to the stockholders last preceding the filing of the bill and by the then state of the law as the same has been interpreted by the Supreme Court, the defendant should be taxed with costs.

Decree accordingly.